Ms. Luecke? Good morning, Your Honor. We request two minutes for rebuttal. Yes, you may have that. May it please the Court, Joan Luecke and Justin Wallace, for the Plaintiffs' Appellants, Patricia Cornwell and Dr. Stacey Gruber, who are with us today. In February of 2013, after a 26-day trial, when the jury returned verdicts for the Plaintiffs on all counts, they found not simply that defendants had violated their fiduciary duty to the Plaintiffs, but that they had done so intentionally or willfully and wantonly disregarded the Plaintiffs' rights. In other words, the jury made a finding in the punitive damages context of what is known as common law malice. Thirteen months later, the trial judge took away that verdict in response to a Rule 50B motion contending that the Plaintiffs had not proved even underlying fiduciary duty breach as a matter of law. This Court, on appeal, is therefore addressed to answer several questions. Whether the Court inappropriately interjected malice as part of the liability finding for breach of fiduciary duty, there is no case anywhere in the country that we have located that indicates that there is a qualified privilege attached to fiduciary duty claims. Whether the Court ignored the fact that privilege had been waived as a defense, and whether the Court disregarded the findings of the jury and substituted his own. Turning quickly to the issue of the substitution of fact-finding, the key fact that the Court found, which was contrary to the jury's finding, was that when the defendants reported a campaign conduit scheme to the Department of Justice, they did so as a self-report. That was the most hotly debated issue at the trial, and a good portion of the trial was the contradictory evidence on that. Defendants claimed they were self-reporting their own principal, Evan Snapper, while plaintiffs claimed they were falsely accusing her of directing the crime, the conduit, which is a felony. We know that the jury found that this was not a self-report, and that it was a false accusation, because in the argument to the jury for punitive damages, the only theory of damages argued was the false report to the Department of Justice. As I just indicated, the jury indeed found that there was an egregious and intentional breach, thereby adopting the plaintiff's position that this was not a self-report, but a false report. If we turn to the actual evidence on that point, what we find is this. Defendant CEO Frank Scatino, also here today, admitted that in the written submission to the Department of Justice, they told the department that Evan Snapper, quote, had acted in a way that was illegal at the direction of Patricia Cornwell.  told the department that he had orchestrated and carried out the scheme under the direction of Ms. Cornwell. Exhibit 281 in this case, the file of Anshan's attorney's law firm, Brian Cave, includes an opening letter from the prosecutors stating, you will receive a subpoena that addresses the issues that you, Anshan's counsel, brought to the attention of the acting director of the public integrity unit. The subpoena deals with any and all documents relating to Patricia Cornwell, her friends and family, and her political contributions. Hence, there was more than enough evidence for the jury to conclude, as it did, that Anshan, who went to the Department of Justice within four weeks of this multi-million dollar complaint being filed against them, did so not to self-report Mr. Snapper, or at very most, to use that only as a vehicle to attempt to derail Ms. Cornwell and this lawsuit. Ms. Cornwell herself testified that she did not direct the commission of this felony. To the contrary, she said she didn't even know about the reimbursements that Mr. Snapper had himself taken for contributions to James Gilmore. As to Hillary Clinton, she received an invitation from Mr. Snapper to purchase tickets for a concert. Within weeks of his having told her, she was maxed to Ms. Clinton, and she deduced from that that tickets were okay. She only permitted tickets to be purchased and reimbursed to eight family and friends because Mr. Snapper, an attorney, assured her that that was permissible. If we assume the privilege doesn't apply, what standard does apply for determining whether there's a fiduciary breach when a report of illegal conduct is made in a situation like this? Any falsity is enough? Well, yes, in the fiduciary context it would be, Your Honor. Even if it's a good faith falsity, in other words? A good faith falsity in a fiduciary context could perhaps be a circumstance which would excuse the fiduciary, but I would point out to the court that actually isn't part of common law malice. It doesn't require whether there's actual falsity or not, but that issue aside, the plaintiffs throughout this case have been consistent in contending this was a false allegation. It was never a suggestion on our part that there was an innocent or inadvertent report. Indeed, much of the case did relate to questioning the ancient officials as to whether they ever bothered to find out what Ms. Cornwell's version of events was before taking it to the DOJ, urging the convening of a grand jury, which happened within two weeks of Mr. Cole's report to the DOJ, and proceeding from there. So the case is about a false accusation. Is it theoretically possible in a common law malice case, which focuses on intent to harm, for a fiduciary to truthfully report and still be liable? Yes, but that wasn't the case. Well, I guess I'm asking it the other way. For a fiduciary breach involving a reporting of misconduct, what standard do you think applies if it's not the privilege standard? I think that, at very least, the fiduciary must make every effort to ensure that the report made is truthful. That would include obtaining the version of events of the client to whom the duty is owed. And I think that it would have to be clear that the fiduciary was acting in the client's best interest and not its own. Even under Judge O'Toole's ruling, he noted that Anshin had a motive to go in there and report to gain a benefit for itself. That might work in a defamation context between strangers or non-fiduciaries. It doesn't work in a fiduciary context. And I take it, is there any case law about fiduciary breaches in the reporting context? Not in the context of reporting an allegedly false crime. That doesn't come as a particular surprise. I'm not surprised, but I just want to make sure there isn't anything that helps us with that. Well, let me put it this way. We've been searching since 2014 and have been unable to find anything, nor has defendant reported anything. Hence, we are in a situation where the judge interjected malice as part of the liability, not as part of the punitive damage assessment, and used the defamation standard. The problem with that is that a fiduciary has an added layer of duty to its client. There is nothing that suggests that a fiduciary's duty to its client is lesser because the client is a public figure, yet you see arguments in the defendant's brief that relate to the standard that's applicable in a defamation case to a public figure. They flipped here the analysis. The focus should be on what the status of the perpetrator is, not the client. Ms. Luque, if we were to agree with you that Judge O'Toole simply got it wrong on the fiduciary duty, punitive damages aspect of it, what would be the remedy that you would ask us for? And does that depend on the correctness of his ruling on the statute of limitations? Well, the statute of limitations doesn't affect the fiduciary duty ruling per se. It affects the overall remedy that we seek, Your Honor. Were you to find that he was wrong on fiduciary duty, then we would ask you to reinsert the fiduciary duty finding. But, of course, if you haven't found the statute of limitations was applied in error, that could turn out to be a problem, and we would have to ask you for retrial. I would point this out, however. On the statute of limitations, while we've all spent a lot of time arguing it, it may be a somewhat academic point. The statute of limits, sorry, the fiduciary duty claim, in terms of how it was tried, was focused on the Department of Justice. That's not a statute of limitations problem because it occurred after the filing of the complaint. The difficulty with that is that your pleadings and the jury instructions seem to rely on all of the evidence, all of the things that purportedly Anjan did wrong to support a fiduciary duty claim. I kept looking for some demarcation as to the breach of fiduciary duty and the punitive damages. Now, the punitive damages plainly are restricted to the DOJ offense, but the earlier claim seems to have drawn on all of your claims of misdoing, and how much would that be affected by the statute of limitations question? If the jury awarded any damages on statute of limitations that was longer than three years ago, that would be affected. I would point out, however, Your Honor, that we actually pled the DOJ only in connection with the statute of limitations, and we tried it that way. The court has also already noted in its decision that the missed book deadline issue was only pled and tried on negligence. We have two verdicts on negligence and contract in addition to the fiduciary duty verdict. There is no question on those two that they were charged on a three-year statute. But they were given up, weren't they, when you didn't get your 54B certification? No, those weren't the ones that were given up, Your Honor. They may have been in part, but what I'm asking the court to focus on in terms of whether the fiduciary verdict could stand on its own at this point is that the missed book deadline, the judge has already found it. Its footnote 4, I believe, to his decision was a negligence issue. That wasn't returned in plaintiff's favor because the judge charged them three times that on negligence and breach of contract they could only consider events within the last three years. The jury also said that in entering their $3.5 million verdict on negligence and approximately $2.4 million verdict on contract and then on their $22 million on breach of fiduciary duty that they were not overlapping any of them. They had separated, so they did not carry over claims. So, respectfully, I would suggest that, as argued, the statute of limitations applies to matters that are not probably at issue at this point. But for purposes of determining what the remedy is, I take it you're asking for a new trial if we affirm on the statute of limitations ruling and reverse on the fiduciary breach ruling. I'm asking for a new trial, and you'll see in our breach we also ask for the reopening of discovery on it. In other words, if you went on fiduciary breach but not on the claims thrown out on statute of limitations, you're not asking for us to reinstate any part of the damages award with respect to fiduciary breach. I'd love to ask you that, but I have no way of telling you whether any, although I doubt it, I can't tell you that no part of that $22 million related to something earlier. Are you asking for a new trial on everything, or are you asking for a new trial if we feel that the jury verdict was correct as to the breach of fiduciary? Are you asking for a new trial just on damages or liability? I'm asking on damages to the extent that if you find that there was error in the judge's reversal on either breach of fiduciary duty or the older contract, sorry, fiduciary duty claim, then we are asking that the liability finding made by the jury after six weeks stand, and that we go back only on damages. And what we are actually asking is, of course, that you reverse on both of those points and reinstate the jury verdicts. Thank you. Mr. Phillips. Good morning, Your Honors, and may it please the Court. Let me start with the remedy issue, although I'm loathe to do that because it assumes something I don't want to assume, which is that there's some basis for reversal. But I do think it's important to put this in context, which is that the plaintiff literally has to run the table in order to get anything other than a new trial as to every aspect of this case. She has to demonstrate that the district court was completely wrong on every aspect of it, not only including the statute of limitations but also JetFlix. And her effort today to try to cleanly segregate out which claims go to which issues simply doesn't work because they argued that JetFlix could be a basis for punitive awards. We know that Evan Snapper had power of attorney, and so the decisions that he made in connection with the property involved in all of these cases, with the misbooked deadline and every other facet of this, could have been part of the fiduciary duty holding of the jury. We simply don't know the answer to that. All we know is that we have a general verdict on three different theories that embrace at least a dozen different sets of claims,  Mr. Phillips, I read the closing arguments of both sides on the punitive damages question, and it did seem to me that the only question there had to do with the DOJ report. You're suggesting to me that punitive damages was part of other claims as well? Well, there were certainly arguments made there. There was certainly evidence put forward of inappropriate behavior by the defendants in this case in connection with more than simply the DOJ report. To be sure, counsel focused exclusively on the DOJ report in her closing argument, but typically that doesn't mean you waive every other argument that you've presented to the jury, particularly when you don't ask the jury to give you a special verdict with respect to every single element of the claims that you have now put forward before the jury over the course of a very long trial. So I just don't think you can reassemble the problem after the fact once it's already been cut away. And that's true as to liability and not just damages? Yes, Your Honor, that's true as to all aspects of it. I want to go back to the DOJ report. Why is that true as to liability? Because you don't know what the basis for liability was. The jury was simply told that if it finds a breach of fiduciary duty, then it could grant punitive damages under that. You don't know what the breach was. Is there an argument premised on some of the fiduciary duty claims being barred by the statute of limitations? Well, we do think that they are barred by the statute of limitations, to be sure, Your Honor. But as the case was tried to the jury, the statute of limitations wasn't a bar under those circumstances, so they could easily have included anything in there as a consequence of that. And there's no way to undo it at this point and figure out exactly what the status of the case is. You simply have to start over again under those circumstances. Now, to be sure, if you affirm as to various aspects of it, and obviously the issues that the plaintiffs have waived by allowing the judgment to be entered against them, I mean, all of that is off the table. The only thing you would go back on at that stage would be liability and damages. Just a simple point, but the basic intention is because of statute of limitations, some of the evidence of fiduciary breach that was relied on here could not be relied on at the retrial. You said it much better than I could, Judge Barron, but absolutely that's right. Could you address something Ms. Lukey raised, which is that the question of malice was no part of this case, that the jury instructions, in fact, allow punitive damages. If you find the defendant's breach to fiduciary duty, you may also consider whether the breach was intentional or deliberate, occurred under aggravating or outrageous circumstances, including a fraudulent or evil motive, or a conscious act that willfully and wantonly disregarded the plaintiff's rights, that the district court now, after the trial, has set aside the jury verdict on saying, I don't think there was any malice there. Well, remember, that's a jury instruction that's given only with respect to punitive damages, and his basic argument is that the flaw in the way the case was submitted on liability was that there should have been a heightened standard required for liability, and unfortunately, because of the punitive damages instruction has about six or seven different elements, all separated by or, we have no idea on what basis the jury determined punitive damages were appropriate under these circumstances, so you don't know whether, you cannot assume that the jury made a malice finding that would have sufficed to demonstrate a breach of fiduciary duty for a reporting under the circumstances of this case. Do you think malice would be required for a, not a punitive damages finding, but if you apply your privilege notion to the jury finding on a breach of fiduciary duty? Yes, Judge Lynch, I do believe malice would be required, but I don't think you have to get there in this particular case because Judge O'Toole is correct in saying in the finding that there was no evidence in this record of any false statements being made to the Department of Justice, and that's, and it's clear to me that that's required. Okay, let's go back. If one reads the Rule 50A motion put in by the prior law firm, it says nothing about privilege. It says nothing in fact about lack of evidence of falsity. The argument that is made there is the breach of fiduciary duty was over with, or any fiduciary relationship was over with before the DOJ got involved here. It would be easy for me to say, sorry, guys, you waived it. It can't be revived on Rule 50B grounds. So what's wrong with that? There are two answers to that, Judge Lynch. First of all, in the 50A motion, the specific argument that which I believe the entire case hinges is, by definition, You just missed, before you go on, you skipped the first word. By definition? No, thus. The first word of that sentence is thus. Right. The sentence prior to that is that all the information came from the subpoena, and the sentence prior to that is that the fiduciary relationship was over. So I agree with you. If you didn't have the word thus, you might say they were making a blanket argument that there was no breach. But since the sentence is thus by definition, it seems like the only argument being made in the 50A motion is because all information came from subpoena or all of the evidence of the relationship was over, thus there was no evidence of breach. There's nothing in that that suggests that there is any broader claim being made as to why there's no breach. Well, even on that theory, Judge Barron, it seems to me that what that clearly pulls in, though, is the subpoena. And there's no way to distinguish how much of this is driven by the subpoena as opposed to the reporting itself. We clearly had a subpoena. We had no choice but to respond to that. That is an absolutely privileged act on our part. There's no way to describe that. The contact with DOJ was well before there was a subpoena. And the case for punitive damages at least starts with that initial report and the characterization of the plaintiff's role. Right. But if you go back through the record, Judge Lynch, specifically what they argue with respect to the subpoena is that there was, in response to that, there was disclosure of very confidential information about e-mail addresses, et cetera, in which the plaintiff placed a great deal of reliance in trying to say that that was both a basis for punitive damages and a basis for liability. And it seems to me that should never have been brought to the jury in the first instance. And that we clearly preserved in our 50A and then re-argued it in 50B. So I get it. The contention is that what's subsumed, the way the privilege issue is subsumed in the 50A motion is by virtue of the unadorned statement that all information was turned over to a subpoena? Well. Is that the argument, though? Yes. And then you're just supposed to draw from that since it was all pursuant to a subpoena, it must have been privilege. Is that the idea? I'm just trying to figure out how privilege gets in under the wording of the Rule 50A motion. Well, I would go at it two ways. I would say that because we pulled in the subpoena, which carries with it a privilege, and then if you want to go with your advice, by definition, an act of reporting is necessarily not a breach of fiduciary duty. But in response to a subpoena, it comes with a privilege. I mean, as a matter of law? Yeah. Well, I mean, I think that's, by referencing the fact of it coming from a subpoena, I don't think we have to technically identify the word privilege. I mean, I think that's the ultimate issue is, is it fairly subsumed when, in fact, what we said is that you have to have false action taken in order to be a breach of fiduciary duty. A subpoena brings in specific information, but it doesn't necessarily bring in false information. But there was no dispute, at least. I don't understand that there was any dispute that the information that was provided pursuant to the subpoena, which was the documents, in fact, there was never any question that that was not false. That's Judge Lynch's question. The allegation is that the statements that were made were misrepresentations about Ms. Cornwell. Right. But not in response to the subpoena. Those, I think, as I understood it, at least, those were all in response to the original reporting. And I think it's important. We don't need to win the privilege issue in order to prevail here because Suppose, I know you won't like this, but suppose that we find that the judge was wrong because these arguments were different view of whether the plaintiffs had enough evidence to get to a jury. What, then, is the remedy that you think is open to the plaintiffs? Well, if the plaintiffs don't prevail on any of the other issues in this case, then the appropriate remedy in that situation is to affirm as to all of that, vacate with respect to the Department of Justice issue, and remand back for a trial limited exclusively to that particular issue. Yes. Now, the next part of the question. And, admittedly, we have other issues that we have raised with respect to affirmatively why matters that ought to constrain what the trial would be. You heard Judge Thompson earlier say, and what would the remand consist of? Would it entail affirmance of liability and damages only to be tried, or would it require retrial on the question of liability, two-part breach of fiduciary duty, and then punitive damages? It would require a retrial of all phases of the case because there's simply no way to know on what basis the jury ultimately entered the verdict that it did. Yes. It's a consequence of that. I mean, it's a general verdict. They can call it a special verdict, but the reality is it's a general verdict. And they had a lot of different claims, and they threw them all in, and they made the point that, you know, Mr. Snapper had a power of attorney and, therefore, is acting as a fiduciary with respect to everything he did. And you don't know what the basis of the rule is. There was one line of your brief that also raised an issue, which is there has to be a constitutionally permissible ratio between punitive damages and the compensatory damages. I take it that's part of why you think it needs to be remanded for a whole. You have to be clear on what the exact nature of the compensatory award is in order to be able to remotely understand whether a potentially $20-some million punitive damage award is warranted under these circumstances. But I thought you were also going to say there are two other points I'd just like to make, even though I'm mooring with your hypothetical, which is that I'm going to lose that first issue. But there are two points I do want to make on the Department of Justice issue. The most directly relevant law on this is the rules of the New York Board of Regents, Section 29.10C, which says for accounting firms that it is prohibited, that the prohibitions on accounting firms only extend to willfully making a false report. So that's as much the basis for the protections and the determination that there's been no breach of fiduciary duty simply by self-reporting under these circumstances. And second, it's incredibly important to remember that there is a constitutional avoidance problem embedded in here. You're making a representation to the government. You are engaged in speech. The court has to be very, very careful and ought to make sure that there are false statements. Judge O'Toole said there were no false statements in this particular case. That determination ought to be affirmed. And if you affirm that, Your Honors, I think you affirm a clause. And suppose we read the evidence to permit the jury to find that false statements were made and, therefore, he is simply wrong as a matter of assessment of the evidence. Is there a backup argument you have? No. If you believe that he's wrong on that, then you should vacate that portion of it and send it back for a new trial. But then you have to run through the rest of the issues. Did I understand you right? That's just with respect to falsity? In other words, I'm trying to figure out what – suppose we don't agree with you that that defamation privilege doctrine applies here because we're dealing with a different circumstance. I would still argue that the fiduciary duty is not violated in the absence of I'm asking are you accepting that it is violated in the presence of evidence of falsity? And malice. No, I didn't add in malice. My position is you would require malice as well. But if we don't agree with you that the defamation context applies here, you're saying that comes then from the statute we'd have to apply it? Yes, willfully making. Willfully making a false report. It's not enough to make a false report. You have to do it willfully. I would say that carries with it at least a malice or some heightened standard of mens rea. That's the best source to determine that, and that's embedded in the case. I don't need a privilege in order to get there. It comes straight from the rules governing accounting firms. Do you want to say anything at all on the statute of limitations issue? Hard for me to improve on Judge O'Toole's. Okay, you'll stick with his opinion. Can I have one last question with this? This sentence where it says, any information that was turned over to a third party pertaining to plaintiffs was pursuant to a government subpoena. You mean that sentence encompassed every statement that was made in the interaction with DOJ? No, that's an open statement. So then if the false statements are contained in some of the statements that just evidently in the record were not turned over, that's information turned over not pursuant to a subpoena, the 50A motion doesn't encompass that, right? Right, but the problem is you can't segregate out what information went by way of the subpoena as opposed to what information went by way of the reporting. And at the end of the day, I remember – You mean segregate out in what sense, that you couldn't know what the jury was relying on and whatnot? You don't know what the jury was relying on. And remember, I think this is important in evaluating – Just so I understand this point, the argument is so long as any of the information that was turned over that the jury could have relied on was privileged in some respect, we have to throw out the whole verdict if there's a privilege. Right, you would have to throw out the whole verdict. But the only other point I wanted to make with respect to that, Your Honor, is that when Judge O'Toole said that there were no false statements made in this context, he did that looking at both sequences of it and concluding that there were no – that because the plaintiffs had the opportunity to ask what information did you supply to the Justice Department? And they never asked that question. They never asked to depose anybody who actually made statements to the Justice Department, and the letters that they relied upon say nothing about accusing Ms. Cornwell of any kind of a crime. And that was the theory in which – and that's the basis on which Judge O'Toole said that there is no false statement with respect to the argument that they put forward in this case. Thank you, Your Honor. If you are caught by surprise by anything Ms. Lukey has to say, we'll give you another minute or two. Thank you. I'll run through my points, I hope, quickly. First, let me be clear that punitive damages were never sought, argued, or referred to at any time in the trial for anything but the Department of Justice reports. I understand Mr. Phillips was not at trial. I lived through all 26 days. The only time the jury ever heard anything about punitive damages was in connection with the Department of Justice report, as argued in the closing. Second, as Judge Barron pointed out, paragraph 26 of a 40-page, 71-paragraph 50A motion was not intended to set forth a qualified privilege requiring a showing of malice. That wasn't the theory under which trial counsel tried the case, and I'm sure that that was strategically intentional because there is no law to suggest that you would borrow from defamation law and ignore the fiduciary duty. The fact that you have substitute counsel does not avoid the import of the requirement that 50B be a renewal of 50A. This was no renewal. We never had any idea that there was a contention that the reports to the Department of Justice were in any way privileged. You can read Mr. Campbell's very capable closing and see that to be the case. May I ask this? The Eleventh Circuit has at least one judge who seems to think that someone making a 50B motion must show that they are prejudiced. We'll give you enough time. Must show some form of prejudice in order to prevail on the 50B motion. That is not the First Circuit rule. But what would your response be if you were asked how were you prejudiced by not having the privilege assertion made in the case? Well, because I was proving common law malice for purposes of punitive damages, and we did in fact prove it, even though the attention that a trial counsel pays to what is purportedly, we're now told, a key element of the liability finding is very different from what you pay to the attention to a punitive damage finding. However, if the defendants had come in here admitting that Special Verdict 2E, in which the finding is made that the conduct was intentional or willfully and wantonly ignored the plaintiff's rights, then we'd probably all be fine because that would mean that what Judge O'Toole really did was to say, on taking away their finding, I don't agree that it was willful or intentional, and motive is the paradigm of a jury question. How were you prejudiced by the 50A motion, not including a reference either to falsity or privilege? Well, falsity I can come back to because that was a matter of the evidence. The parties were just diametrically opposed. So how were you prejudiced by it not being included in the 50A motion? We actually haven't referenced any prejudice from falsity in the 50A motion, Your Honor. Does that mean if we read Judge O'Toole to have made a finding that there was no falsity, because he did seem to say that. He says that. Then the waiver argument is no bar to us considering that issue? No, Your Honor. The problem is this. He makes a finding that there was no falsity, which has to do with constitutional or actual malice, which if we had known we were supposed to be proving malice, we would have had the right to prove either. However, on the falsity issue, because we were contending this was a false report, we proved it anyway. Our evidence was that the plaintiff said nothing to do with the case. I'm just asking for waiver purposes. You're arguing that we can't look at anything other than what's in the 50A motion. Correct. Right? No argument regarding the sufficiency of the evidence as to falsity or malice or anything is referenced, take it for granted for now, is referenced in the 50A motion. Okay? That would be way too. That would be right. So that would be you'd win. Right? Yes. Except one possibility is why should you win if that's a pretty strict rule? And how are you actually hurt by it? Because the falsity of the statements was central to your whole case. You knew you had to prove that. You had the whole trial to prove it. So he didn't mention it in the 50A. Big deal. What's your answer to that? Well, my answer to that is if he's relying on it in the 50B, he has to have asserted. Why is the question. Why? Why does he have to? We can start with the language of Rule 50B, Your Honor, which says it's a renewal of 50A. Then, of course, we have the cases that have come down saying precisely that, including the very recent RFF case. You can't make up new grounds in the 50B motion because it's a renewal. All you're supposed to do, all we used to do, in fact, was to take our 50A motions and either state renewed or pick up the body and move it into the 50B. What was done here, because it was a different law firm, was a completely different motion. And would you normally have a chance after a 50A motion to make some requests to put in more evidence if you thought it was a pretty good 50A motion that you'd like to respond to? We would in this instance. And that would you be deprived of here? We were, in fact, deprived of that, although in this instance the judge was making it clear that he wasn't going to allow the 50A motion. In fact, he told me not to file a response. And so I didn't. And it went to the jury that same day. Later, and this is 13 months later, the judge was making findings that differed from the jury on the basis of credibility determinations of who to believe. But on the falsity piece, a big part of our evidence would be that the defendants themselves said, we reported that Patricia Cornwell directed this crime. I mean, if I can use an analogy, if Raymond Patriaca told one of his henchmen to go eliminate a competitor, Ray Patriaca directed the crime. He didn't pull the trigger, but he directed the crime. That's what they told the Department of Justice, that Evan Snapper was a pawn, that he executed on the scheme, but it was directed by Ms. Cornwell. And Ms. Cornwell told the jury, no, I didn't. I didn't even know what he was doing. The jury believed Ms. Cornwell. Now, perhaps Judge O'Toole didn't believe Ms. Cornwell, but that isn't his role. And on a 50B motion, he should not have substituted his findings for the jury's, which is what he did. Ms. Luque, you got through two of your points before I diverted you to the prejudice question. I wanted to go quickly to the point about Paragraph 26 that Judge Barron raised. That's absolutely right. It is, their arguments were, we don't any longer have a fiduciary duty, which is legally wrong because the duty continues for the knowledge gained previously. And we produced documents pursuant to a subpoena. Contrary to what was said by Mr. Phillips, we never contended that turning over documents was the issue. We said you reported, on December 29, James Cole reported to Raymond Holzer that Ms. Cornwell directed the commission of a crime. Eight days later, a grand jury was convened. All of this was before the jury in this case. We weren't allowed to find out what happened, only to know that the grand jury was terminated without indictment. And Mr. Snapper pled guilty to the felony of filing false statements with the FEC. So we are in a position now where we respectfully suggest that that language in Paragraph 26 about the subpoena, which has an absolute privilege for the documents themselves, has nothing to do with the argument that is being made. They didn't raise it. It wasn't inadvertent. Prior counsel didn't intend to attempt to pursue a claim that they acted with a qualified privilege. It doesn't exist in fiduciary duty law, and they never made the claim. It was out of the blue when we saw it on 50B. We didn't even think it would be taken seriously by the court. But then, a good 10 months after the motion was filed, 13 months after the verdict, we got the judge's decision. Let me also say there was a quick reference on the statute of limitations. The issue here is the IDT case, which is a state case, says in the context of a matter that's governed by CPLR 214, which is their three-year statute of limitations for specific situations, that in that kind of a case with a licensed professional, that the conduct will be treated as if it's tied to the malpractice statute of three years. The Second Circuit says after that in Malmsteen, and has been followed by a couple of federal district courts there, because New York law does govern in this case, applying New York law. But if we're talking about someone acting as a business manager, even if they happen to be an accountant, it's literally the same facts. If we're talking about someone acting as a business manager, that's not a licensed professional. It may be a business person, may be a business professional, but it's not a professional covered by the malpractice statute. We had a malpractice claim against Anshin for their handling of the case, but the bulk of the case was about their business management. Malmsteen says that's not tied to 214, so it's a six-year statute. If, in fact, it's based on a contractual relationship, Anshin had a contract that set forth the duties, and that was at the central point of the case. Thank you. Thank you. I'm realizing that I'm the only thing between you and lunch. I will try to be as quick as I can, if that's all right, Your Honor. Just a few points. First of all, we moved post-trial to knock punitive damages out on the retrial. They opposed that on the basis of the NETCHAT's evidence and argued that that would be a legitimate basis for keeping punitives in this case. So the idea that there's only one basis for punitives is simply not consistent with the way the record is played out in this case, and this court can't segregate that out in the way that they proposed. With respect to the relationship between 50A and 50B, make two points. First of all, this court, in both Losario and in Lynch, has not taken a technical interpretation of 50B. It has been quite loose about that. Second, there are at least other circuits, the Eighth Circuit in particular, and a case called Hearst in the 82F232, in which the court says that the standard of review on the determination of whether 50A has been properly reserved in 50B is one that's deferential to the district court because the district court's in the best position to judge that. It seems to me that would be particularly true in the context of prejudice. Why is that so if it is a comparison of the text? We can read that just as easily as the district court can. If you're looking at the question of what is subsumed, what is fairly presented, what did the plaintiff have notice of, how was this case tried, and was there any prejudice as a consequence of that, it seems to me the district judge is in a far better position to make that determination than this court is, and the court ought to defer to the district judge under those circuits. Is that last part critical to your statement being convincing, where you said prejudice? In other words, you said the district court and prejudice, and I could see how maybe the district court would be in a good position better than the Court of Appeals to determine how prejudiced they were, but if I drop that part of your statement. No, I think it would still apply to the notice. What was the plaintiff on notice of, and how was the case tried? From the Rule 50A motion? Yeah. Because the problem with it would be why file a Rule 50A motion at all? If you're saying anything that they're on notice of, they're just on notice of from the trial, you could just say here's a 50A motion, period. You wouldn't even have to include anything. No, no, but my basic point is you would construe the 50A motion in the context of how the case was tried. But that's the point about how can this text be so construed, and I guess aren't we in as good a position as the district court to do that? That's probably true. So I suspect that the place where it would be the strongest would be with respect to the prejudice component of this. The argument that they never challenged the subpoena, they specifically asked Ms. Cornwell to testify as to whether or not she authorized the disclosure of any documents to the Department of Justice, and she said categorically no under no circumstances. So it was clear that they at least put on evidence to demonstrate that that action was designed to be a breach of fiduciary duty, and therefore, again, you cannot just eliminate that. That was before the jury. Finally, with respect to the statute of limitations, IDT tells us as clearly as it can be said the issue is what is the remedy. They sought a compensatory award. They sought damages. Under those circumstances, it's a three-year statute of limitations. The suggestion that somehow you can carve us out because we're not professionals under these circumstances, it's way too late to make that argument. They are stopped to do that. They got a heightened jury instruction that said that we had to satisfy the standard of being a professional, and they asked for that. They got that instruction. You cannot come back now and say, oh, no, they're not a professional for these purposes. They are stopped. I urge you to affirm your honors if you have no further questions. Thank you. Thank you. We hope you all.